MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2014 ME 27
Docket:        Was-13-214
Argued:        November 19, 2013
Decided:       February 25, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

RICHARD C. HICKSON

v.

VESCOM CORPORATION

SAUFLEY, C.J.

[¶1]   Vescom Corporation, which provided private security services at a paper mill owned by Domtar,[1] appeals from a judgment of the Superior Court (Washington County, *R. Murray, J.*) entered in favor of Richard C. Hickson after a jury found that Vescom had violated the Whistleblowers' Protection Act, 26 M.R.S. §§ 831-840 (2013), by terminating Hickson's employment as a security officer stationed at the mill.  Vescom argues that Hickson failed to make a protected whistleblower's report because he reported only the actions of Domtar or government officials and not the actions of his employer, Vescom.  We affirm the judgment.

---

[1]  Domtar is referred to in the record alternately as Domtar Maine Corporation; Domtar Maine LLC; Domtar Industries, Inc.; and Domtar Pulp & Paper.  We refer to the entity as Domtar in this opinion.

## I. BACKGROUND

[¶2]  The following facts are taken both from the trial evidence, viewed in the light most favorable to supporting the jury's verdict, and from the additions to the record that were properly effectuated by a court order pursuant to M.R. App. P. 5(e).  *See Beane v. Me. Ins. Guar. Ass'n*, 2005 ME 104, ¶ 11, 880 A.2d 284; *Sullivan v. Porter*, 2004 ME 134, ¶ 2, 861 A.2d 625.

[¶3]  In July 2006, Vescom Corporation provided security at the Domtar mill in Baileyville pursuant to a contract between Vescom and Domtar.  Hickson worked for Vescom at the mill.  He was a shift supervisor who worked at the gate. In that capacity, he was responsible for performing duties related to both security and safety.  Vescom adopted Domtar's safety policies verbatim, and Vescom's employees were responsible for following and enforcing those policies.  Included among these policies was a requirement that visitors carry respirators and wear protective footwear.  Open-toed shoes were not allowed to be worn anywhere on the premises.

[¶4]  On Saturday, July 8, 2006, Hickson was on duty in the afternoon when then-Governor John Baldacci was visiting the mill with a State Representative and others.  Scott Beal, Domtar's environmental health and safety manager at the time, was with the Governor and his party.  The Governor's party did not check in at the gate as was customary for visitors, and Hickson noticed when the party walked by

at about 1:30 p.m. that the Representative was wearing open-toed sandals, the Governor and others were wearing street shoes, and no one in the group was carrying a respirator. Hickson did not leave his post to interrupt the tour but wrote in the Vescom log book, which his Vescom supervisor, David Norman, usually reviewed each morning, "Governor + group in Mill—safety concern—No sign in by anyone—improper footwear."

[¶5] When Norman reviewed the book, he told Hickson that it was "Domtar's way." Beal then spoke with Hickson on July 14 and told Hickson that he had recognized the issue with the sandals and shoes during the tour, and had tried to "herd" the members of the group so that they would be safe. Later, Norman asked Hickson sarcastically if he had gotten the Governor "all straightened up," to which Hickson replied, "No."

[¶6] On July 25, Hickson sent Governor Baldacci an email from his personal email account expressing his concerns about the safety issues that he noticed. In the email, he acknowledged that the Governor's group had been accompanied by Domtar employees but pointed out that compliance with the safety standards would assist security officers in the event of an emergency. Although he noted that he was sending the email from his personal account, he signed the email, "Sgt. R.C. Hickson  Vescom Security."

4

[¶7] The Governor's staff contacted Domtar to inform it about the email. Upon learning of the email from Domtar, Vescom terminated Hickson's employment on July 26. Vescom based its decision in part on the email and Hickson's failure to go up the chain of command before sending it, and in part on two earlier incidents that did not result in formal discipline and were never recorded in Hickson's personnel file.

[¶8] Hickson filed a complaint in the Superior Court on December 8, 2010, alleging that Vescom had terminated his employment in violation of the Whistleblowers' Protection Act.[2] After the claim survived Vescom's motion for summary judgment, the matter proceeded to a three-day jury trial, held in March 2013. At the close of Hickson's case-in-chief, Vescom moved for judgment as a matter of law, and, after all evidence had been presented, the court denied the motion.

[¶9] Based on a theory that Hickson's complaint addressed only a violation by Domtar or the government officials, Vescom requested the following jury instructions:

> The Whistleblower Protection Act provides that no employer may discharge an employee because the employee, acting in good faith,

---

[2] Hickson also alleged that Vescom had illegally failed to provide him with a copy of his personnel file within ten days after receiving his request in violation of 26 M.R.S. § 631 (2013). Hickson did not, however, pursue this claim at trial after the court granted summary judgment on the count in Vescom's favor. The court interpreted the statute not to provide for an individual right of action and to only potentially support a claim for equitable relief or attorney fees.

reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is *a violation of law or rule committed or practiced by the employer*. Thus, in order to determine whether the Plaintiff was discharged in violation of this provision of the Whistleblower Protection Act, you must determine two things: one, was the employee acting in good faith; and two, *did the employee report what he reasonably believed to be a violation of law committed or practiced by his employer, Vescom Corporation. Reporting a violation of law committed by another corporation or by an individual unrelated to Vescom is not protected activity*.

The second relevant provision of the Whistleblower Protection Act provides that no employer may discharge an employee because the employee, acting in good faith, reports to the employer or a public body, what the employee has reasonable cause to believe is *a condition or practice of the employer* that would put at risk the health or safety of that employee or any other individual. Again, this provision requires that you make two determinations: first whether the employee was acting in good faith, as I will define that term for you; and second, *whether the employee reported what he reasonably believed to be a condition or practice of the employer, Vescom Corporation, that would put the health or safety of any person at risk. Reporting an unsafe condition or practice created by another corporation or by an individual unrelated to Vescom is not protected activity*.

(Emphasis added.)

[¶10] The court declined to give the instructions requested by Vescom. Instead, the court instructed the jury as follows regarding the Whistleblowers' Protection Act:

To prevail upon his Whistleblower Protection Act claim against Vescom Corporation, Mr. Hickson must prove each of the following:

One, that Mr. Hickson made a legally protected whistleblower report or reports;

And, two, that Mr. Hickson's legally protected whistleblower reports were a substantial motivating factor in . . . Vescom Corporation's decision to terminate his employment on July 25th, 2006.

Now in this case the parties do not dispute that Mr. Hickson was terminated from his employment with Vescom Corporation and that the email he sent to the Governor on July 25, 2006 was a substantial motivating factor leading to his termination.

To find Mr. Hickson made legally protected whistleblower reports, he must prove that he had a reasonable, good faith belief that he was reporting, orally or in writing, to his employer or to a public body what he had a reasonable cause to believe was either: One, a violation of a law or rule of this state or the United States; or, two, a condition or practice that would put at risk the health or safety of Mr. Hickson or any other individual.

To find that Mr. Hickson engaged in legally protected whistleblower activity in sending his July 25, 2006 email to the office of the Governor, you must also find that Mr. Hickson first brought the alleged violation, condition, or practice to the attention of a person having supervisory authority with his employer, and that he allowed the employer a reasonable opportunity to correct any such alleged violation, condition, or practice. Such prior notice to Mr. Hickson's employer would not be required if Mr. Hickson proves that he had a specific reason to believe that reports to his employer would not result in promptly correcting the alleged violation, condition, or practice.

Not every complaint that relates to safety is necessarily a legally protected report under the Whistleblower Protection Act. The law protects only complaints made in good faith, and only reports made with reasonable cause to believe a dangerous condition or practice exists. The requirement that a report be made in good faith may be met when a report is motivated by a desire to stop the dangerous condition or to expose an illegal or unsafe practice. A reasonable cause requirement is met only when the employee presents evidence showing that he had a subjective belief that a dangerous

condition or practice existed, and that the belief was objectively reasonable in that a reasonable person might have believed that a dangerous condition or practice existed.

[¶11] The jury deliberated and returned a unanimous verdict in favor of Hickson. The jury awarded Hickson compensatory damages of $35,000 and punitive damages of $175,000. Vescom again moved for judgment as a matter of law, asserting again that Hickson's email was not a legally protected whistleblower report because it did not address a practice of Vescom. The court denied that motion and, in the same order, reduced the judgment by the amount of a previous settlement involving two other parties. The court entered a judgment in the amount of $182,747.09 plus interest, costs, and attorney fees.

[¶12] Vescom timely appealed to us, and the parties agreed to supplement the record due to some electronic recording or transcription inadequacies. The court entered an order pursuant to M.R. App. P. 5(e) that added facts to the record.

## II. DISCUSSION

A. Motion for Judgment as a Matter of Law

[¶13] Vescom contends that it was entitled to a judgment as a matter of law because the conduct that Hickson reported was not undertaken by Hickson's *employer*, Vescom, and therefore the Act did not apply.

[¶14] "We review the denial of a motion for judgment as a matter of law to determine if any reasonable view of the evidence and those inferences that are

8

justifiably drawn from that evidence supports the jury's verdict." *Budzko v. One City Ctr. Assocs. Ltd. P'ship*, 2001 ME 37, ¶ 9, 767 A.2d 310 (quotation marks omitted). Here, the question of whether the law entitled Vescom to a judgment in its favor turns on the interpretation of the Whistleblowers' Protection Act. We interpret the statute de novo. *Cent. Me. Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 1262.

[¶15] "The primary purpose in statutory interpretation is to give effect to the intent of the Legislature." *Id.* (quotation marks omitted). "We examine the plain meaning of the statutory language seeking to give effect to the legislative intent, and we construe the statutory language to avoid absurd, illogical, or inconsistent results." *Id.* (quotation marks omitted). In doing so, we "construe the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Id.* (quotation marks omitted). "All words in a statute are to be given meaning, and no words are to be treated as surplusage if they can be reasonably construed." *Id.* (quotation marks omitted). Only if the statute is ambiguous do we examine "legislative history or other extraneous aids in interpretation of a statute." *Id.*

[¶16] In relevant part, the Whistleblowers' Protection Act provides as follows:

No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:

> **A.** The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States; [or]
>
> **B.** The employee, acting in good faith, or a person acting on behalf of the employee, reports to the employer or a public body, orally or in writing, what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual. The protection from discrimination provided in this section specifically includes school personnel who report safety concerns to school officials with regard to a violent or disruptive student . . . .

26 M.R.S. § 833(1).

> Subsection 1 does not apply to an employee who has reported or caused to be reported a violation, or unsafe condition or practice to a public body, unless the employee has first brought the alleged violation, condition or practice to the attention of a person having supervisory authority with the employer and has allowed the employer a reasonable opportunity to correct that violation, condition or practice.

*Id.* § 833(2).

[¶17]  Thus, as we have summarized, "To prevail on a [Whistleblowers' Protection Act] claim, an employee must show that (1) he engaged in activity protected by the WPA; (2) he experienced an adverse employment action; and (3) a

causal connection existed between the protected activity and the adverse employment action." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 12, 915 A.2d 400.

[¶18]   Because the statute requires that the conduct must have been something that the employer would have "a reasonable opportunity to correct" if it were notified of the conduct before the report to a public body, 26 M.R.S. § 833(2), it is evident that the Legislature intended that the offending conduct must be connected to the actions of the employer.   We stated in *Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, 954 A.2d 1051: "Subsections (1)(A), (1)(C), and (2) of section 833, when read together, unambiguously limit the protection afforded by the [Act] to (1) employees (2) who report to an employer (3) about a violation (4) committed or practiced by that employer." *Id.* ¶ 8 (footnote omitted).[3]

[¶19]   In *Costain*, a medical office terminated the employment of a rehabilitation aide because she had, years before she became an employee of the office, participated in an investigation of a doctor who had worked for the office. *Id.* ¶¶ 2-3.  We held that the aide's earlier participation in the investigation was not a protected action because it "bore no relationship to the employment in which she was engaged at the time of the investigation.   There was no violation alleged against her then employer." *Id.* ¶ 9.

---

[3]   Subsection (1)(C) of section 833, which was at issue in *Costain* but is not at issue here, prohibits discrimination against an employee who "is requested to participate in an investigation, hearing or inquiry held by that public body, or in a court action."  26 M.R.S. § 833(1)(C) (2013).

[¶20]  Vescom argues that *Costain* must be understood to require that the offending conduct had to have been committed solely and directly by the employer. Given the context in which we decided *Costain*, however, Vescom reads the language of our decision too narrowly.  Neither our opinion nor the statute limits a whistleblower claim to those reports that are exclusively related to an affirmative action of the employer.  Rather, the relevant provisions of the Act require that the report must address violations, conditions, or practices that the employer has the ability and authority to correct, and those violations, conditions, or practices complained of must bear a direct relationship to the employee's current employer. *See* 26 M.R.S. § 833(1)(A), (B), (2); *Costain*, 2008 ME 142, ¶¶ 8-9, 954 A.2d 1051. In other words, the reported offending conduct must be reported by a person who is then an employee and must be connected to the employer in such a way that the employer could take corrective action to effectuate a relevant change.

[¶21]  Here, Hickson's report occurred while he was employed by Vescom and did bear a "relationship to the employment in which []he was engaged at the time" of his report.  *Costain*, 2008 ME 142, ¶ 9, 954 A.2d 1051.  Hickson reported a concern about safety that arose when his employer, Vescom, was under contract to perform safety and security functions at the mill.  The evidence before the jury, and before the court on Vescom's motion for judgment as a matter of law, demonstrates that Vescom adopted Domtar's safety standards for Vescom

employees to follow and enforce, and that Hickson was fired in part because he failed to go further up the chain of command to, as Vescom's northeast regional manager testified, "give his supervisor a chance to fix it." *See* 26 M.R.S. § 833(2) (requiring that an employee who makes a report to a public body first report the issue to a person having supervisory authority with the employer and allow the employer "a reasonable opportunity to correct" the situation). In this context, Hickson's report concerning Vescom falls directly under the Act.

[¶22] Thus, taking a reasonable view of this evidence and any justifiable inferences that arise from it, there is adequate support for the jury's determinations that the email constituted a legally protected whistleblower report, that Vescom was in charge of security and safety at the mill, that Vescom's involvement in the lapse of security and safety on the date in question was a subject of the email, and that Hickson brought his concerns to a Vescom supervisor and afforded Vescom "a reasonable opportunity to correct" the situation. 26 M.R.S. § 833(2); *see Budzko*, 2001 ME 37, ¶ 9, 767 A.2d 310. The court did not err in denying Vescom's motion for judgment as a matter of law.

B.    Jury Instructions

[¶23] Vescom argues that the court erred in failing to instruct the jury using the language requested by Vescom.

[¶24] On appeal, a party can demonstrate entitlement to a requested jury instruction if "the instruction was requested and not given by the court and it: (1) states the law correctly; (2) is generated by the evidence in the case; (3) is not misleading or confusing; and (4) is not otherwise sufficiently covered in the court's instructions." *Clewley v. Whitney*, 2002 ME 61, ¶ 8, 794 A.2d 87. "In addition, the refusal to give the requested instruction must have been prejudicial to the requesting party." *Id.* Because Vescom's requested instructions were based on an overly restrictive reading of *Costain*, 2008 ME 142, ¶ 8, 954 A.2d 1051, and because the court's instructions sufficiently covered the statutory language, we affirm the resulting judgment. *See Clewley*, 2002 ME 61, ¶ 8, 794 A.2d 87.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Arthur J. Greif, Esq., and Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for appellant Vescom Corporation

David G. Webbert, Esq., Johnson & Webbert, LLP, Augusta, for appellee Richard C. Hickson

**At oral argument:**

Arthur J. Greif, Esq., for appellant Vescom Corporation

David G. Webbert, Esq., for appellee Richard C. Hickson