ENTERED OCT 0 8 2014

STATE OF MAINE                                    SUPERIOR COURT
ANDROSCOGGIN, ss                                  CIVIL ACTION
                         RECEIVED & FILED Docket No. CV-13-056
                                                  AND-NM-10-03-14
                             OCT 0 6 2014
GERARD BRADY,
                             ANDROSCOGGIN
          Plaintiff          SUPERIOR COURT
                                                  ORDER ON DEFENDANTS'
          v.                                      MOTION FOR SUMMARY
                                                  JUDGMENT
KEVIN JOYCE, NALDO
GAGNON, and COUNTY
OF CUMBERLAND,

          Defendants


Before the court is defendants' motion for summary judgment on all counts of plaintiff's complaints. For the following reasons, the motion is granted.

PROCEDURAL HISTORY

In September 2012, plaintiff filed a complaint with the Maine Human Rights Commission and subsequently was issued a "right to sue" letter. Plaintiff filed his complaint against defendants Joyce and Gagnon on April 12, 2013 in Cumberland County and was assigned docket number CV-13-064. The complaint includes count I: violation of Maine's Civil Rights Act; count II: defamation; count III: interference with advantageous relationship; and count IV: punitive damages.

Plaintiff filed a separate complaint against defendant County of Cumberland on April 16, 2013 in Androscoggin County and was assigned docket number CV-13-056. The complaint includes count I: violation of Maine Whistleblower Protection Act; count II: violation of Maine Civil Rights Act; count III: defamation; and count IV: interference with advantageous relationship.

Plaintiff filed a motion to transfer the lawsuit against defendants Joyce and Gagnon to Androscoggin County and to consolidate that lawsuit with the lawsuit against County of Cumberland. The court granted plaintiff's motion to transfer venue on June 12, 2013 and granted plaintiff's motion to consolidate the two lawsuits on June 24, 2013. Defendants filed the motion for summary judgment on May 2, 2014.

## BACKGROUND

Plaintiff Gerard Brady has worked for the Cumberland County Sheriff's Department for more than 30 years. (Supp. S.M.F. ¶ 1.) From 1994 until 2012, plaintiff worked as a detective in the Criminal Investigation Division (CID). (Supp. S.M.F. ¶ 4.) Plaintiff is trained to administer polygraph examinations. (Supp. S.M.F. ¶¶ 13-14.) In addition to performing polygraphs as part of his position at the Sheriff's Department, plaintiff runs a private company called Forensic Polygraph Services, which also offers polygraph examinations. (Supp. S.M.F. ¶¶ 15, 21.)

Defendant Kevin Joyce was elected Sheriff in November 2010. (Supp. S.M.F. ¶ 52.) Defendant Naldo Gagnon serves as Chief Deputy. (Supp. S.M.F. ¶ 7.) Plaintiff alleges that defendants Joyce and Gagnon directed an aggressive investigation against plaintiff to punish him for (1) reporting an incident of prisoner abuse and (2) publicly declaring that he would not support defendant Joyce in the 2010 election if another individual, Michael Edes, ran against defendant Joyce. Defendants argue plaintiff was disciplined for improperly running his private polygraph business during work hours.

2

Alleged Prisoner Assault

In May 2010, plaintiff saw a video of an incident that plaintiff believed depicted a corrections officer assaulting an inmate. (Supp. S.M.F. ¶ 27.) Detective John Fournier and Court Officer Scott Sutherland were also present when plaintiff saw the video. (Supp. S.M.F. ¶ 29.) After seeing the video, plaintiff remarked to Detective Fournier and Officer Sutherland, "someone is going to jail." (Supp. S.M.F. 30.) About two weeks later, plaintiff raised the incident in a CID meeting attended by two of plaintiff's supervisors, Sergeant James Estabrook and Lieutenant Donald Foss. (Supp. S.M.F. ¶¶ 8, 9, 31.) Plaintiff said CID had not been assigned to investigate the case and he did not know why nothing was being done. (Supp. S.M.F. ¶ 31; Add. S.M.F. ¶ 2.) Lieutenant Foss responded that the matter was the subject of an internal affairs investigation. (Supp. S.M.F. ¶ 32.) Within a week of that meeting, plaintiff raised the issue again with Sergeant Estabrook. (Add. S.M.F. ¶ 3.) According to plaintiff, he raised the issue a third time with Lieutenant Joel Barnes, the internal affairs investigator.[1] (Add. S.M.F. ¶ 4.) After a couple of months, plaintiff dropped the issue. (Supp. S.M.F. ¶ 39.)

Support for Michael Edes

At approximately the same time the video incident was unfolding, plaintiff learned that Mr. Edes was considering running for Sheriff in the 2010 election. (Supp. S.M.F. ¶ 46.) Plaintiff specifically remembers telling at least four coworkers, including Detective Brian Ackerman, Captain Jeff Davis, Lieutenant Foss, and Sergeant Estabrook, that plaintiff would support Mr. Edes in the

[1] Defendants deny that plaintiff raised the alleged assault with Lieutenant Barnes based on plaintiff's deposition testimony. (Reply S.M.F. ¶ 4.) Plaintiff's assertion is supported by his answers to interrogatories. (Add. S.M.F. ¶ 4.)

3

election if he ran against defendant Joyce. (Add. S.M.F. ¶ 32.) Sergeant Estabrook and Lieutenant Foss both report to defendants Joyce and Gagnon. (Add. S.M.F. ¶ 33.) According to Sergeant Estabrook and Lieutenant Foss, it was widely known around the Sheriff's office that plaintiff did not support defendant Joyce politically. (Add. S.M.F. ¶¶ 29-31; Opp. S.M.F. ¶ 53.) Defendants Joyce and Gagnon claim they did not know plaintiff supported Mr. Edes until this lawsuit was filed. (Supp. S.M.F. ¶¶ 53-54.)

Criminal Investigation

Defendants claim that after a review of department activities, Lieutenant Foss noticed a significant decline in the number of plaintiff's pre-employment polygraph examinations conducted for the County in 2011. (Supp. S.M.F. ¶ 56.) According to plaintiff, Lieutenant Foss instructed plaintiff to change the method he used to report his statistics for polygraph examinations before 2011 and Lieutenant Foss knew the change would lower plaintiff's numbers. (Opp. S.M.F. ¶ 56.) On February 7, 2012, Lieutenant Foss, Sergeant Estabrook, and Captain Donald Goulet met with defendants Joyce and Gagnon to discuss plaintiff's pre-employment polygraph statistics for 2011. (Supp. S.M.F. ¶ 57.) The following day, defendant Joyce placed plaintiff on administrative leave. (Supp. S.M.F. ¶ 58.) At defendant Joyce's direction, Lieutenant Foss and Sergeant Estabrook launched a criminal investigation to determine whether plaintiff was running his private polygraph business on County time. (Supp. S.M.F. ¶ 59.) According to plaintiff, defendant Joyce directed who was to interview plaintiff as part of the investigation. (Opp. S.M.F. ¶ 60.)

Lieutenant Foss and Sergeant Estabrook reached the following conclusions after the investigation. Plaintiff conducted some private polygraphs

4

during business hours for which he was paid by the County. (Supp. S.M.F. ¶ 62a.) Plaintiff used what was referred to in the Sheriff's Department as "unmanaged comp time" to take paid time off during which he sometimes ran his private business. (Supp. S.M.F. ¶ 69.) This comp time accrued because CID detectives are salaried employees, but sometimes worked longer hours than the standard work week. (Supp. S.M.F. ¶¶ 63-64.) For each extra hour worked, detectives would earn an hour of paid time off. (Supp. S.M.F. ¶ 65.) Plaintiff received permission from his supervisor, Sergeant Estabrook, on the days he left work early. (Supp. S.M.F. ¶ 67; Opp. S.M.F. ¶ 62a.)

The investigation further revealed that plaintiff performed one private polygraph while on a paid sick day. (Supp. S.M.F. ¶ 62b.) On one occasion, plaintiff used a County vehicle to deliver polygraph results for his business. (Supp. S.M.F. ¶ 62c.) Plaintiff's private clients would call plaintiff on his Sheriff's Department phone and he would instruct them to call him back on his private cell number. (Supp. S.M.F. ¶ 62d.)

After the investigation and at defendant Joyce's direction, Lieutenant Foss and Sergeant Estabrook met with the District Attorney to review the case. (Supp. S.M.F. ¶¶ 70-71.) The District Attorney declined to prosecute plaintiff. (Supp. S.M.F. ¶ 73.) Defendant Gagnon then transferred the case to the Maine Criminal Justice Academy, which declined to take any action. (Supp. S.M.F. ¶¶ 74-75.)

While the case was being referred to other departments, the matter was also assigned² to Lieutenant Barnes to conduct an internal affairs investigation. (Supp. S.M.F. ¶¶ 76-77.) The investigation revealed policy violations for

_____

² The parties' statements of material fact do not state who ordered the internal affairs investigation. (See Supp. S.M.F. ¶ 76.)

5

plaintiff's use of sick time and unmanaged comp time to run his business. (Supp. S.M.F.¶ 78.) In addition, the investigation found that plaintiff failed to advise Cumberland County law enforcement agencies that contacted plaintiff about pre-employment polygraphs that the County charged less than his private company for those services. (Supp. S.M.F. ¶ 78.)

Following the internal affairs investigation, plaintiff had a predetermination hearing with defendant Gagnon on April 18, 2012. (Supp. S.M.F. ¶ 81.) Plaintiff was represented by the Union and had an attorney present at the hearing. (Supp. S.M.F. ¶ 82.) Defendant Gagnon imposed discipline by letter dated April 20, 2012, reassigning plaintiff from CID to patrol as a patrol deputy. (Supp. S.M.F. ¶¶ 83-84.) Lieutenant Barnes, the investigator, believed that plaintiff was disciplined more harshly than he deserved. (Add. S.M.F. ¶ 21.) Plaintiff grieved defendant Gagnon's decision to the County Manager, who upheld the discipline. (Supp. S.M.F. ¶ 85.) The Union pursued the case to arbitration, and an arbitration hearing was held on March 13, 2013. (Supp. S.M.F. ¶¶ 86-87.) The arbitrator overturned plaintiff's demotion. (Supp. S.M.F. ¶ 88; Opp. S.M.F. ¶ 88; Add. S.M.F. ¶ 22.)

After the arbitrator overturned the demotion, the defendant County of Cumberland terminated plaintiff's employment. (Add. S.M.F. ¶ 23.) The same arbitrator overturned the termination. (Add. S.M.F. ¶ 24.) Plaintiff returned to work on August 26, 2013. (Supp. S.M.F. ¶ 89.)

Defendants acknowledge that many Sheriff's Department employees have used unmanaged comp time for personal reasons such as running errands, attending ballgames, and drinking alcohol. (Add. S.M.F. ¶ 25.) No one else has been investigated for these instances. (Add. S.M.F. ¶ 25.) Defendant Joyce is

6

aware of one incident involving a commander at Logan Airport who had forgotten his passport. (Add. S.M.F. ¶ 26.) A lieutenant picked up the passport at the commander's house and drove from Maine to Boston in a County vehicle to deliver the passport. (Add. S.M.F. ¶ 27.)

## DISCUSSION

### 1. Standard of Review

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Dussault v. RRE Coach Lantern Holdings, LLC, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting F.R. Carroll, Inc. v. TD Bank, N.A., 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." McIlroy v. Gibson's Apple Orchard, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting N. E. Ins. Co. v. Young, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." Lewis v. Concord Gen. Mut. Ins. Co., 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." Id.

### 2. Maine Whistleblowers Protection Act Claim

The Act provides, in part:

> No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because

7

the employee, acting in good faith . . . reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted by the laws of this state, a political subdivision of this state, or the United States.

26 M.R.S. § 833 (2013). A claim for a violation of the Maine Whistleblower's Protection Act (WPA) is technically an action under the Maine Human Rights Act (MHRA) and it is therefore evaluated "within the framework of the MHRA." Fuhrmann v. Staples the Office Superstore E., Inc., 2012 ME 135, ¶ 14, 58 A.3d 1083. In evaluating a motion for summary judgment in an employment discrimination case, the court must "apply a three-step burden-shifting analysis to determine whether (1) the employee has presented prima facie evidence of discrimination; (2) the employer has presented prima facie evidence of a legitimate non-discriminatory reason for the adverse action; and, in response, (3) the employee has presented prima facie evidence that the employer's proffered reason is pretextual or untrue." Id. ¶ 13.

a. Prima Facie Case

To demonstrate a prima facie case for whistleblower discrimination, plaintiff must show: (1) he engaged in protected activity under the WPA, (2) he experienced an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. Id. ¶ 15.

1) Protected Activity

Protection under the WPA is limited "to (1) employees (2) who report to an employer (3) about a violation (4) committed or practiced by that employer." Hickson v. Vescom Corp., 2014 ME 27, ¶ 18, 87 A.3d 704. There is no serious

8

dispute that plaintiff is an employee, that the inmate assault incident was a violation, and that violation was committed by the employer.[1]

At issue is whether plaintiff "reported" the violation to his employer. A report includes "complaining to one's supervisors." Osher v. Univ. of Me. Sys., 703 F. Supp. 2d 51, 66 (D. Me. 2010). Plaintiff claims he complained about the assault incident at a meeting attended by two of his supervisors, Lieutenant Foss and Sergeant Estabrook. (Add. S.M.F. ¶ 1.) Within a week of that meeting, plaintiff claims he raised the issue again with Sergeant Estabrook. (Add. S.M.F. ¶ 3.) Plaintiff later asked Lieutenant Barnes about the assault and why nothing had been done about it. (Add. S.M.F. ¶ 4.) Plaintiff has raised a genuine issue of material fact regarding protected activity.

### 2) Adverse Employment Action

"An employee has suffered an adverse employment action when the employee has been deprived . . . of 'something of consequence' as a result of a demotion in responsibility, a pay reduction, or termination . . . ." LePage v. Bath Iron Works Corp., 2006 ME 130, ¶ 20, 909 A.2d 629 (quoting Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996)). Defendants admit plaintiff was investigated, reassigned, and temporarily terminated. (Reply S.M.F. ¶ 6.) Plaintiff has raised an issue of fact regarding an adverse employment action.

### 3) Causal Connection

With respect to plaintiff's WPA claim, defendants primarily dispute whether plaintiff can demonstrate a causal connection between the protected activity and the adverse employment actions. The court is "mindful that

---

[1] This claim is brought against defendant County of Cumberland. Defendants Joyce and Gagnon cannot be held individually liable for a violation of the WPA. Fuhrmann v. Staples the Office Superstore E., Inc., 2012 ME 135, ¶ 35, 58 A.3d 1083.

9

discrimination claims in general are often difficult to assess at the summary judgment stage, and particularly that the issue of whether an employee has generated an issue of fact regarding an employer's motivation or intent is one heavily dependent on the individual facts before the court." Fuhrmann, 2012 ME 135, ¶ 13, 58 A.3d 1083.

The timing of events in this case is plaintiff's greatest obstacle to demonstrating a prima facie case. Plaintiff alleges he saw the video depicting the assault in May 2010, and concedes that he dropped the issue within a few months of seeing the video. (Opp. S.M.F. ¶¶ 27, 39.) Plaintiff was not placed on administrative leave until February 8, 2012. (Opp. S.M.F. ¶ 58.) Thus, the gap between plaintiff's complaints and the adverse employment action was well over one year. Courts have held that time gaps much shorter than one year are insufficient as a matter of law to raise an inference of causation in discrimination cases. See Capalbo v. Kris-Way Truck Leasing, Inc., 821 F. Supp. 2d 397, 417-18 (D. Me. 2011) (seven months); Morón-Barradas v. Dep't of Educ. of P.R., 488 F.3d 472, 481 (1st Cir. 2007) (eight months); Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir. 2010) (several months). Plaintiff cannot rely on temporal proximity alone to raise an issue of material fact on causation.

Plaintiff argues that other circumstantial evidence demonstrates that defendants' actions were motivated in part by plaintiff's complaints. Plaintiff has produced evidence that his supervisor, Lieutenant Foss, instructed him not to report his private polygraph examinations in his yearly employment statistics. (Add. S.M.F. ¶ 11.) Plaintiff was investigated in 2011 after following Lieutenant Foss's instructions, when his polygraph examination numbers were much lower than the previous year. Although Lieutenant Foss's initial conversation

10

happened within six months of plaintiff's complaints, it was not an adverse employment action. Lieutenant Foss simply told plaintiff to report his statistics in a different manner.

The remainder of plaintiff's assertions suggests defendants continued to pursue investigations, both criminal and administrative, well beyond what the findings from those investigations merited. This evidence is relevant to plaintiff's burden on the third step of the analysis on summary judgment: that defendants' proffered nondiscriminatory reason is pretextual. This evidence alone, however, does not establish plaintiff's prima facie case.[*] See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." (emphasis added)). The cases plaintiff relies on concern the third step of the burden-shifting analysis, after plaintiff has already demonstrated a prima facie case. See Cookson v. Brewer Sch. Dep't, 2009 ME 57, ¶ 15, 974 A.2d 276 ("Cookson has generated issues of fact regarding her prima facie case . . . ."); Trott v. H.D. Goodall Hosp., 2013 ME 33, ¶ 16, 66 A.3d 7 (relying on the "close temporal nexus" between protected activity and an adverse employment action for plaintiff's prima facie case); Stanley v. Hancock County Comm'rs, 2004 ME 157, ¶¶ 15-16, 864 A.2d 169 (same).

In this case, there is an absence of any evidence of causation. There is no evidence that defendants Joyce and Gagnon were aware of plaintiff's statements about the assault. There is no evidence that the investigation regarding plaintiff's

[*] "Because the MHRA generally tracks federal anti-discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA." Doyle v. Dep't of Human Servs., 2003 ME 61, ¶ 14 n.7, 824 A.2d 48.

polygraph numbers was initiated in response to plaintiff's complaints. The significant time gap between plaintiff's complaints and the investigation is too long to support an inference of causation. Plaintiff has failed to meet his burden on step one of the burden-shifting analysis. Accordingly, defendant County of Cumberland is entitled to judgment on count I of plaintiff's complaint.

3. Maine Civil Rights Act Claim

In count II of his complaint, plaintiff alleges that defendants attempted to interfere with plaintiff's free speech rights in violation of the Maine Civil Rights Act. Under 5 M.R.S. § 4682,

> Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State or violates section 4684-B, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

5 M.R.S. § 4682(1-A) (2013). To demonstrate a valid claim under this section, plaintiff must allege "an interference with his free speech rights by physical force or violence, damage or destruction of property, trespass on property, or threats thereof." Andrews v. Dep't of Envtl. Prot., 1998 ME 198, ¶ 23, 716 A.2d 212.

Plaintiff argues that defendants have damaged or destroyed his property by terminating his employment. The statute, however, also refers to "trespass on property," which suggests that the statue covers tangible property only. See Andrews, 1998 ME 198, ¶¶ 9, 23, 716 A.2d 212 (dismissing Maine Civil Rights

---

Section 4684-B does not apply to the facts of this case. See 5 M.R.S. § 4684-B (2013).

Act Claim where plaintiff alleged only adverse employment actions); see also Connolly v. Henrietta D. Goodall Hosp., Inc., 2006 WL 270222, at *3 (Me. Super. Ct. Jan. 6, 2006) (dismissing claim where plaintiff was suspended from work without pay for one day because plaintiff failed to allege force or violence, damage or destruction of property, or trespass on property). The cases plaintiff relies on concern the meaning of property for purposes of the Due Process Clause and do not apply in this context. See Clukey v. Town of Camden, 717 F.3d 52, 56 (1st Cir. 2013); Lovejoy v. Grant, 434 A.2d 45, 50 (Me. 1981).

Even if plaintiff is correct that defendants "damaged or destroyed" his property by firing him, plaintiff's MCRA claim fails because plaintiff cannot demonstrate causation for the same reasons discussed with regard to plaintiff's WPA claim. Plaintiff's conversations about possibly supporting Mr. Edes in the election occurred before the 2010 election in November. The investigation into plaintiff's polygraph statistics and the employment action did not occur until late 2011 and early 2012. There is no other evidence linking plaintiff's political statements to the investigation. Accordingly, all defendants are entitled to judgment on count II of plaintiff's complaint.

4. Discretionary Function Immunity

Defendants· have raised the defense of discretionary function immunity for plaintiff's remaining tort claims under the Maine Tort Claims Act. See 14 M.R.S. § 8111(1)(C) (2013). "Discretionary function immunity protects government employees from personal civil liability for conduct undertaken in

---

· Although plaintiff alleged defamation and interference with advantageous relationship against defendant County of Cumberland, plaintiff concedes that defendant County of Cumberland is absolutely immune from liability on plaintiff's tort claims. (Pl.'s Opp. Mem. at 18.)

their official capacities." <u>Hilderbrand v. Washington County Comm'rs</u>, 2011 ME 132, ¶ 8, 33 A.3d 425. If the privilege applies, employees are protected from liability even if they abuse their discretion. <u>Id.</u> ¶ 9. An employee will lose immunity, however, "when the conduct so clearly exceeds the scope of an employee's authority that the employee cannot have been acting in his official capacity." <u>Id.</u>

Because "there is no comprehensive statute describing all of the duties of sheriffs in Maine," <u>id.</u> ¶ 11, the court applies "a four-factor test to determine the scope of immunity:"

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

<u>Id.</u> ¶ 10 (quoting <u>Tolliver v. Dep't of Transp.</u>, 2008 ME 83, ¶ 19, 948 A.2d 1223 (plurality opinion)). The court finds that all of these factors weigh in favor of immunity for all of the alleged actions and statements, with one exception.

First, the majority of the challenged actions, including the initial investigation, referring the case to the District Attorney's office, and referring the case to the Maine Criminal Justice Academy, involve the basic government objective of exposing and preventing employee misconduct. Second, investigating reports of potential misconduct is essential to meeting that basic objective. Despite plaintiff's claims, there is no evidence in the record that the investigations were pursued in bad faith. Third, the decision whether to refer a

14

matter for further review and investigation involves the basic exercise of judgment by the Sheriff's Department. Plaintiff argues that after the District Attorney's office declined to prosecute plaintiff, defendants should not have referred the matter to the Maine Criminal Justice Academy. But whether employee misconduct rises to the level of a crime is a different question than whether it violates the employer's own policies or other ethical standards. Finally, the Sheriff's Department has the authority to conduct its own investigations, refer matters for potential criminal prosecution, and refer matters to the Maine Criminal Justice Academy for conduct potentially leading to decertification. Defendants are therefore immune from suit for these actions.

One alleged incident, however, falls outside the scope of discretionary function immunity. Plaintiff alleges that Sergeant Estabrook contacted Michael Grovo, Chief of the Buxton Police Department and one of plaintiff's private polygraph clients prior to any finding of misconduct on the part of plaintiff. According to Grovo, Sergeant Estabrook stated he was investigating plaintiff for working on his private polygraph business while on duty for and being paid by the County. (Add. S.M.F. ¶ 41.) Unlike the investigation itself, statements to third parties concerning the results of an investigation are not essential to accomplish any basic government objective. See Rippett v. Bemis, 672 A.2d 82, 88 (Me. 1996) (an investigation is a discretionary official act, but public statements concerning the results of an investigation are not). The court must therefore determine whether defendants are potentially liable for Sergeant Estabrook's statements. Id. at 88-89.

15

5. Defendants Joyce and Gagnon's Liability for Sergeant Estabrook's Statement

Although plaintiff has not filed suit against Sergeant Estabrook individually, plaintiff seeks to hold defendants Joyce and Gagnon⁷ vicariously liable for Sergeant Estabrook's tortious conduct. As plaintiff points out, the Law Court has quoted the Restatement (Third) of Agency § 7.08, which provides:

> A principal is subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party on or purportedly on behalf of the principal when actions taken by the agent with apparent authority constitute the tort or enable the agent to conceal its commission.

Gniadek v. Camp Sunshine at Sebago Lake, Inc., 2011 ME 11, ¶ 34, 11 A.3d 308 (quoting Restatement (Third) of Agency § 7.08 (2006)).

Although defendants Joyce and Gagnon might otherwise be liable for Sergeant Estabrook's conduct in this case, they have discretionary function immunity in their capacity as Sergeant Estabrook's supervisors. As the Rippett court explained, "[t]he Maine Tort Claims Act in general provides immunity from liability for government officials acting in their discretionary function of properly supervising employees who are performing discretionary functions." Rippett, 672 A.2d at 88. There is no evidence that defendant Joyce or Gagnon directed Sergeant Estabrook to make the alleged defamatory statements to Grovo, which might support a finding that defendant Joyce and/or defendant Gagnon was not performing an official discretionary act.

---

⁷ Plaintiff concedes that a predetermination letter written by defendant Gagnon is absolutely privileged. (Pl.'s Mem. 13.) In the predetermination letter, defendant Gagnon wrote "your unscrupulous practice of not informing potential municipal clients of fees involved, cost taxpayers untold amounts of tax dollars above what would have been incurred with the polygraphs being performed by CCSO." (Supp. S.M.F. ¶ 93.) Plaintiff has failed to identify any other defamatory statements made by defendants Joyce or Gagnon personally.

16

Defendant Joyce's decision to conduct an investigation and delegate to Sergeant Estabrook certain aspects of that investigation was discretionary. To the extent defendant Gagnon participated in the investigation, he is also immune. See Miller v. Szelenyi, 546 A.2d 1013, 1022 (Me. 1988). ("Those who assist or participate in a decision or other action protected by the discretionary immunity provisions are themselves immune to the extent of their assistance or participation.").

Finally, in Rippett, the sheriff waived immunity from vicarious liability to the extent of the sheriff's department's liability insurance coverage. Id. at 89. There is no evidence of any such insurance coverage in this case. (Supp. S.M.F. ¶¶ 103-06.)

Plaintiff has failed to raise an issue of material fact with regard to a prima facie case for his WPA discrimination and MCRA claims and with regard to discretionary function immunity under the MTCA for his remaining claims.

The entry is

> The Defendants' Motion for Summary Judgment is GRANTED. Judgment is granted in favor of Defendants Kevin Joyce, Naldo Gagnon, and County of Cumberland and against Plaintiff Gerard Brady on all counts of Plaintiff's Complaints.

Date: _10·3·14_

Nancy Mills
Justice, Superior Court

17

GERARD BRADY - PLAINTIFF

Attorney for: GERARD BRADY
JONATHAN M GOODMAN  - RETAINED
TI   H HEISLER
51₁ CONGRESS ST
PO BOX 9711
PORTLAND ME 04104-5011


vs
COUNTY OF CUMBERLAND - DEFENDANT

Attorney for: COUNTY OF CUMBERLAND
PETER MARCHESI  - RETAINED 05/14/2013
WHEELER & AREY PA
27 TEMPLE ST
PO BOX 376
WATERVILLE ME 04903-0376

SUPERIOR COURT
ANDROSCOGGIN, ss.
Docket No  AUBSC-CV-2013-00056


DOCKET RECORD


Filing Document: COMPLAINT                    Minor Case Type: OTHER NEGLIGENCE
Filing Date: 04/16/2013

## Docket Events:

04/23/2013 FILING DOCUMENT - COMPLAINT FILED ON 04/16/2013

04/23/2013 Party(s):  GERARD BRADY
           ATTORNEY - RETAINED ENTERED ON 04/16/2013
           Plaintiff's Attorney: JONATHAN M GOODMAN

04/₂3/2013 Party(s):  COUNTY OF CUMBERLAND
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 04/12/2013
           THROUGH WILLIAM WHITTEN

04/23/2013 Party(s):  COUNTY OF CUMBERLAND
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 04/18/2013

04/23/2013 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 04/23/2013

05/14/2013 Party(s):  COUNTY OF CUMBERLAND
           RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 05/14/2013

05/14/2013 Party(s):  COUNTY OF CUMBERLAND
           ATTORNEY - RETAINED ENTERED ON 05/14/2013
           Defendant's Attorney: PETER MARCHESI

05/14/2013 Party(s):  COUNTY OF CUMBERLAND
           MOTION - MOTION TO CHANGE VENUE FILED ON 05/14/2013
           WITH MEMORANDUM OF LAW, REQUEST FOR HEARING

05/28/2013 Party(s):  GERARD BRADY
           OTHER FILING - OPPOSING MEMORANDUM FILED ON 05/24/2013
           PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR TRANSFER OF VENUE

05/'?1/2013 Party(s):  COUNTY OF CUMBERLAND