2011 ME 132

**Larry W. HILDERBRAND II**

v.

**WASHINGTON COUNTY COMMISSIONERS et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2011.
Decided: Dec. 20, 2011.

426

favor of the Washington County Commissioners and Sheriff Donald Smith on Hilderbrand's complaint for slander per se, invasion of privacy, and negligent infliction of emotional distress. The alleged torts arose from public comments Smith made explaining his decision to discontinue working with the Maine Drug Enforcement Agency (MDEA) after Smith viewed a home video in which Hilderbrand appeared. Because we agree with the trial court's conclusion that Smith was entitled to discretionary function immunity pursuant to the Maine Tort Claims Act, we affirm. *See* 14 M.R.S. § 8111(1)(C) (2010).[1]

Charles W. March, Esq. (orally), and Adrienne S. Hansen, Esq., Reben, Benjamin & March, Portland, for appellant Larry W. Hilderbrand II.

Peter T. Marchesi, Esq., and Cassandra S. Shaffer, Esq. (orally), Wheeler & Arey, P.A., Waterville, for appellees Washington County Commissioners and Donnie Smith.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Larry W. Hilderbrand II appeals from the Superior Court's (Washington County, *Cuddy, J.*) summary judgment in

## I. BACKGROUND

[¶ 2] At all times relevant to this appeal, Hilderbrand was a law enforcement officer at the Pleasant Point Police Department in Washington County and not an employee of the Washington County Sheriff's Office. Hilderbrand was assigned to the MDEA, a consortium of law enforcement agencies that investigates illegal drug trafficking. *See* 25 M.R.S. § 2955.

[¶ 3] In February 2008, Washington County Sheriff Donald Smith received a DVD that included video clips of Hilderbrand. The sixty-minute video depicts individuals consuming alcohol and then behaving crassly.[2] Hilderbrand joined in the antics, and he repeatedly mentioned his profession as a police officer.[3] In one

---

1. We do not reach Smith's claim of intentional act immunity pursuant to 14 M.R.S. § 8111(1)(E) (2010). Nor do we reach the Commissioners and Smith's argument that Smith's comments were not slander per se or invasion of privacy as a matter of law.

   The trial court concluded that the Commissioners were entitled to summary judgment because Smith was not their employee, and so, they cannot be vicariously liable for his actions. Hilderbrand does not challenge this conclusion on appeal, and we affirm.

2. The participants discussed and depicted bodily functions, in particular, vomiting and voiding. In one scene when Hilderbrand was not present, a gun was pointed at a child sleeping on the floor.

3. For example, in one scene, he described police use of force techniques as he engaged in horseplay with a male adult who was lying on the ground while apparently intoxicated. In another, he performed a horizontal gaze

scene, he quickly consumed beer from a mug labeled "police officer" and started the engine of a motor vehicle while holding his Maine Drug Enforcement Agent badge up to the camera's view. Later, he discharged a handgun, which the parties describe as his service pistol. His badge and gun are shown several times during the video.

[¶ 4] After watching the video, Smith publicly announced that his department would no longer work with the MDEA. Smith explained that his decision was based on the video; stated that Hilderbrand's conduct in the video was inappropriate, if not criminal, and should have resulted in criminal charges; and noted that the video raised a question of child endangerment. Smith said that the Washington County Sheriff's Office would not work with the MDEA because Hilderbrand was assigned to it.

[¶ 5] Hilderbrand claims that these statements were defamatory and that Smith made them despite knowing that Hilderbrand had been cleared of criminal wrongdoing in an earlier investigation by the Attorney General. Hilderbrand further contends that Smith made these comments for political gain.

[¶ 6] On February 8, 2010, Hilderbrand filed a three-count complaint against the Washington County Commissioners and Smith alleging slander per se, invasion of privacy, and negligent infliction of emotional distress. The Commissioners and Smith moved for summary judgment asserting immunity and arguing that Hilderbrand's claims for defamation and invasion of privacy failed as a matter of law. The trial court concluded that Smith has discretionary function immunity and that

the Commissioners could not be liable for Smith's conduct because he is not their employee.[4] The court entered its summary judgment in favor of the Commissioners and Smith, and Hilderbrand timely appealed pursuant to 14 M.R.S. § 1851 and M.R. App. P. 2.

## II. DISCUSSION

[¶ 7] We review a decision granting a summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party, to determine whether the parties' statements of material facts reveal a genuine issue of material fact. *HSBC Bank USA, N.A. v. Gabay,* 2011 ME 101, ¶ 8, 28 A.3d 1158. A fact is material if it can affect the outcome of the case. *Flaherty v. Muther,* 2011 ME 32, ¶ 31, 17 A.3d 640. It is possible to determine the scope of discretionary function immunity on a summary judgment record. *See Lewis v. Keegan,* 2006 ME 93, ¶ 14, 903 A.2d 342. The person asserting the affirmative defense of immunity bears the burden of proof. *Quintal v. City of Hallowell,* 2008 ME 155, ¶ 33, 956 A.2d 88.

[¶ 8] Discretionary function immunity protects government employees from personal civil liability for conduct undertaken in their official capacities. 14 M.R.S. § 8111(1)(C); *see also* Simmons, Zillman & Gregory, *Maine Tort Law* § 15.27 (2001 ed.). For individual defendants, as opposed to governmental entities, immunity is the exception and not the rule. *See Moore v. City of Lewiston,* 596 A.2d 612, 614–15 (Me.1991). The purpose of discretionary function immunity is to protect "the 'independence of action' necessary for the effective management of state government." *Darling v. Augusta Mental*

---

nystagmus test on an obviously intoxicated individual.

4. Hilderbrand does not challenge the portion of the judgment concluding that the Commissioners are not liable for Smith's conduct.

*Health Inst.*, 535 A.2d 421, 426 (Me.1987) (quoting Restatement (Second) of Torts § 895D cmt. b (1979)).

The basis of the immunity has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits.... [T]ort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function.

*Darling*, 535 A.2d at 425 (quoting Restatement (Second) of Torts § 895D cmt. b).

■ [¶ 9] If an employee is entitled to discretionary function immunity, he will be shielded from liability for those discretionary functions even if he abuses that discretion. *See* 14 M.R.S. § 8111(1)(C) (stating immunity exists "whether or not the discretion is abused").[5] However, immunity is lost when the conduct so clearly exceeds the scope of an employee's authority that the employee cannot have been acting in his official capacity. *See Selby v. Cumberland Cnty.*, 2002 ME 80, ¶ 6 n. 5, 796 A.2d 678.

■ [¶ 10] Defining the scope of an employee's discretionary function immunity begins with a determination of the employee's duties. *See Gove v. Carter*, 2001

ME 126, ¶ 9, 775 A.2d 368. When a statute clearly indicates the duties of the employee, we construe immunity in light of that statute. *Id.* ¶ 14. When no statute clearly indicates the employee's duties, we apply a four-factor test to determine the scope of immunity:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 19, 948 A.2d 1223 (plurality opinion) (quoting *Darling*, 535 A.2d at 426).[6]

[¶ 11] There is no comprehensive statute describing all of the duties of sheriffs in Maine. Sheriffs are constitutional officers elected by the people of their respective counties, *see* Me. Const. art. IX, § 10, and as elected officials, sheriffs are consid-

---

5. The full text reads:

> **Immunity.** Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:
> ....
> **C.** Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve

under which the discretionary function or duty is performed is valid;
....
14 M.R.S. § 8111(1).

6. Although *Tolliver* involved the discretionary function immunity of an entity pursuant to 14 M.R.S. § 8104–B(3), the analysis is the same for individual discretionary function immunity pursuant to section 8111(1)(C). *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 50 n. 12, 948 A.2d 1223 (Alexander, J., concurring).

ered to be governmental employees for purposes of the MTCA. *See* 14 M.R.S. § 8102(1). The Legislature has described the duties of Maine sheriffs in general terms: "The sheriff shall act as the chief county law enforcement officer and is responsible for administering and directing the sheriff's department as authorized by the county budget. The sheriff shall inform the county commissioners of sheriff's department activities on a regular basis." 30–A M.R.S. § 401(1); *see also* 30–A M.R.S. §§ 351–473 (describing sheriffs' administrative functions).

[¶ 12] Discretionary function immunity may protect an employee, even when the employee's actions are not specifically authorized by statute or regulation, as long as the employee's actions were "reasonably encompassed by [his] duties." 14 M.R.S. § 8111(1); *accord Grossman v. Richards*, 1999 ME 9, ¶ 5, 722 A.2d 371. Because there is no specific legislative mandate regarding a sheriff's authorization to make public statements, whether Smith is entitled to discretionary function immunity hinges on our application of the four *Darling* factors to Smith's actions, in light of the constitutional and statutory provisions related to sheriffs. As discussed below, each of the factors weighs in favor of concluding that section 8111(1)(C) immunizes Smith's conduct in this case.

[¶ 13] First, Smith's decision to terminate the relationship between the Washington County Sheriff's Office and the MDEA and his public explanation for his decision necessarily involve a basic governmental policy, program, or objective of law enforcement. By statute, Smith is the chief Washington County law enforcement officer, and he is responsible for administering and directing the sheriff's department. *See* 30–A M.R.S. § 401(1). Smith's decision to end his department's affiliation with the MDEA was entirely within that

critical area of responsibility, and he provided his criticism of Hilderbrand's actions and the MDEA's retention of Hilderbrand as an assigned officer to explain this decision.

[¶ 14] Second, Smith's decision to disassociate his department with the MDEA was essential to the realization or accomplishment of a basic governmental objective of the department—law enforcement in Washington County. Our cases require a strong link between the basic governmental objective and the means used to realize it. *See, e.g., Jorgensen v. Dep't of Transp.*, 2009 ME 42, ¶ 17, 969 A.2d 912 (completing road construction is essential to the basic governmental objective of road safety and construction); *Roberts v. State*, 1999 ME 89, ¶ 10, 731 A.2d 855 (supervision of inmates is essential to a corrections program); *Rippett v. Bemis*, 672 A.2d 82, 88 (Me.1996) (sheriff deputy's public statements regarding internal investigation in violation of department policy were not essential to rooting out internal department misconduct). Here, Smith's decision to stop any assignment of his deputies to the MDEA was essential to ending what Smith saw as an inappropriate use of Washington County's law enforcement resources. Smith's public explanation of his decision to end cooperation with the MDEA is also essential to the realization or accomplishment of another basic governmental objective of the department—transparency in governmental action.

[¶ 15] Third, Smith's challenged actions required the exercise of basic policy evaluation, judgment, and expertise. Smith is the political leader of law enforcement in Washington County. Our construction of section 8111(1)(C) has long afforded immunity from tort liability "associated with a plan or policy developed at a high level of government." *Tolliver*, 2008

ME 83, ¶ 19, 948 A.2d 1223 (citing *Darling*, 535 A.2d at 426). Immunity extends to discretionary decisions "integral to the accomplishment of a uniquely governmental policy or program." *Id.* ¶ 20.

[¶ 16] By electing Smith sheriff, the voters of Washington County indicated their belief that he possesses the requisite basic skills, judgment, and expertise to make decisions about law enforcement in that county. When he decided to discontinue working with the MDEA, and to publicly explain that decision, Smith, as the lead law enforcement agent for Washington County, was exercising his skills, his judgment, and his expertise. Smith's comments, even if improvident or ill-advised, gave the public information to understand and evaluate Smith and his decision to terminate cooperation with the MDEA. As the trial court noted, the voters reelected Smith after he made the comments that gave rise to this suit.

[¶ 17] Fourth, Smith possesses the requisite statutory authority and duty to control the relationship between the Washington County Sheriff's Office and the MDEA. *See* 25 M.R.S. § 2955(5) (requiring the chief administrative officer of a law enforcement agency to nominate officers under his or her control for service with the MDEA). Terminating this relationship is a decision unique to the function of the Washington County Sheriff's Office as a government agency. *Cf. Tolliver*, 2008 ME 83, ¶ 49, 948 A.2d 1223 (Alexander, J., concurring) (listing discretionary decisions unique to another government agency).

[¶ 18] Although no statute explicitly authorizes Smith to publicly explain this decision, the Legislature has indicated that discretion need not be grounded in a specific statute or other authority. *See Grossman*, 1999 ME 9, ¶ 5, 722 A.2d 371. Smith's immunity from liability for his public comments may be broader than that

of many government employees because of the broad course and scope of his job. *Cf. Morgan v. Kooistra*, 2008 ME 26, ¶¶ 23–24, 941 A.2d 447 (denying immunity where a city employee made defamatory comments outside the course and scope of his employment). As an elected official, Smith's employment responsibilities include publicly explaining his policy decisions. *See Grossman*, 1999 ME 9, ¶ 8, 722 A.2d 371 (quoting the trial court's reasoning that elected alderman's public comments at a city council meeting were "ill-informed, ill-advised, and otherwise actionable" but not in excess of section 8111(1)(C) immunity). His public explanation of his change in policy was an integral part of the change itself, and we are unable to separate the two. *See Norton v. Hall*, 2003 ME 118, ¶ 9, 834 A.2d 928.

[¶ 19] Our respect for the separation of power requires us to broadly construe Smith's authority because he is a constitutional officer. *See* Me. Const. art. IX, § 10. Discretionary function immunity "serves the important purpose of separation of power by preventing the judicial branch from entertaining tort actions as tools for manipulating important policy decisions that have been committed to coordinate branches of government." *Tolliver*, 2008 ME 83, ¶ 17, 948 A.2d 1223 (quoting *Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me.1996)) (quotation marks omitted).

[¶ 20] Because Smith's decision and explanatory statements were within the scope of his discretion, Smith is immune from liability for his discretionary acts, even if those acts constituted an abuse of that discretion. *See* 14 M.R.S. § 8111(1)(C). In addition, Smith's public explanations of his decision to terminate his office's relationship with the MDEA did not so clearly exceed the scope of his authority that he was no longer acting in

his official capacity. *See Selby*, 2002 ME 80, ¶ 6 n. 5, 796 A.2d 678.

[¶ 21] We are unmoved by Hilderbrand's assertions that Smith made his public comments for political reasons and that, in doing so, Smith acted in bad faith. An elected official does not lose discretionary function immunity simply because political considerations may have influenced his or her actions.

[¶ 22] Because application of all four *Darling* factors to the undisputed facts indicates Smith's allegedly tortious activities were within the MTCA's discretionary function immunity provision, the Superior Court did not err in dismissing the suit against him on that basis. *See* 14 M.R.S. § 8111(1)(C); *Darling*, 535 A.2d at 426.

The entry is:

Judgment affirmed.