MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 111
Docket:       Was-18-28
Argued:       October 11, 2018
Decided:      July 11, 2019

Panel:        SAUFLEY, C.J., and, MEAD, GORMAN, JABAR, HJELM, HUMPHREY, and CLIFFORD,* JJ.
Majority:     SAUFLEY, C.J., and, GORMAN, HJELM, and CLIFFORD, JJ.
Concurrence/
  Dissent:    MEAD, JABAR, and HUMPHREY, JJ.

NANCY J. McCANDLESS

v.

JOHN RAMSEY et al.

SAUFLEY, C.J.

[¶1]  Twenty years ago, responding to concerns about the costs of providing places for people to board and ride horses, the Legislature established immunity from liability for certain injuries suffered through the risks inherent in equine activities.  *See* P.L. 1999, ch. 498, §§ 2-6 (effective Sept. 18, 1999) (codified at 7 M.R.S. §§ 4101, 4103-A (2018)); L.D. 2108, Summary (119th Legis. 1999).  We are asked for the first time to address the scope of that immunity.

---

* Although not present at the oral argument, Justice Clifford did participate in the development of this opinion.  *See* M.R. App. P. 12(a)(2) ("A qualified justice may participate in a decision even though not present at oral argument.").

[¶2] Nancy J. McCandless appeals from a summary judgment entered by the Superior Court (Washington County, *Mallonee, J.*) concluding that John and Tracy Ramsey's daughter is immune from liability on McCandless's complaint alleging that the child negligently rode a horse in an arena, causing injury to McCandless. We affirm the Superior Court's judgment holding that the immunity statute precludes the liability that could otherwise arise from the equine activities at issue here.

## I. BACKGROUND

[¶3] The basic facts are these: McCandless was standing on a track inside a riding arena when a horse ridden by the Ramseys' ten-year-old daughter, after passing directly by McCandless three times, made contact with her during a fourth circuit. McCandless fell and injured her wrist, and she has now sued the child through her parents, seeking damages for her injuries.

[¶4] The following details of the event are taken from the parties' statements of material facts and reflect the record as viewed in the light most favorable to McCandless as the nonprevailing party. *See Avis Rent A Car Sys., LLC v. Burrill*, 2018 ME 81, ¶ 2, 187 A.3d 583. On July 7, 2010, McCandless went to a horse arena to watch children ride horses. In the arena, a circular track one to two inches deep had been worn into the dirt and was visible to onlookers.

Horses were not restricted to this track, however, and they rode throughout the arena and near the doors to the barn in which the arena was situated.

[¶5] Spectators were accommodated in the interior of the barn, which included an observation room with a plexiglass window where people could observe the activities inside the structure. McCandless had been sitting outside of the observation room in one of a set of folding chairs that were arranged along the side of the indoor arena away from the horses.

[¶6] McCandless got up from her seat and began walking from the folding chairs toward what she considered to be the most convenient barn exit. On her way, McCandless walked around some hay bales, which McCandless admits caused her to walk in the area where people rode horses.

[¶7] The Ramseys' daughter, then ten years old, was riding a horse she had not ridden before in the indoor arena area. The girl completed three circuits in the arena, passing McCandless and others each time. At some point during her fourth circuit in the arena, the horse was slow to respond to the child rider's directions, and the horse made contact with McCandless when she was between five and fifteen feet from the barn door. McCandless fell and injured her wrist.

[¶8]  On July 6, 2016, McCandless filed a complaint against the Ramseys "as parents" of their daughter seeking damages for medical bills, pain and suffering, lost enjoyment of life, and permanent impairment allegedly incurred due to the Ramseys' daughter's negligence.  *See* M.R. Civ. P. 17(b); *Miller v. Miller*, 677 A.2d 64, 67 (Me. 1996); *see also* 19-A M.R.S. § 1651 (2018).[1]  The Ramseys moved for summary judgment on the ground that McCandless's negligence action was barred due to the statutory immunity provisions of 7 M.R.S. §§ 4101 and 4103-A.

[¶9]  The court granted the Ramseys' motion for summary judgment, holding that section 4103-A(1) provides a broad immunity from liability for injuries arising out of equine activities under routine conditions.  The court concluded that none of the statutory exceptions to immunity applied.  *See id.* § 4103-A(2)-(4).  McCandless filed a timely notice of appeal.  *See* 14 M.R.S. § 1851 (2018); M.R. App. P. 2A, 2B(c)(1).

## II.  DISCUSSION

[¶10]  For purposes of summary judgment, we accept as true that the horse came in contact with McCandless and that McCandless was injured as a

---

[1] There has been no allegation of parental negligence.  *Cf. Bedard v. Bateman*, 665 A.2d 214 (Me. 1995).  Nor has McCandless alleged that the Ramseys' daughter "willfully or maliciously cause[d]" McCandless's injuries.  *Cf.* 14 M.R.S. § 304 (2018).

result of that contact.  McCandless's appeal concerns only whether the court properly interpreted and applied the immunity statutes to preclude her suit against the Ramseys' daughter.

[¶11]  We review this decision granting a summary judgment "de novo, viewing the facts in the light most favorable to the nonmoving party, to determine whether the parties' statements of material facts reveal a genuine issue of material fact."  *Hilderbrand v. Wash. Cty. Comm'rs*, 2011 ME 132, ¶ 7, 33 A.3d 425.  "A genuine issue of material fact exists when the evidence requires a fact-finder to choose between competing versions of the truth."  *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504.

[¶12]  Because the person asserting the affirmative defense of immunity bears the burden of proof, *see Hilderbrand*, 2011 ME 132, ¶ 7, 33 A.3d 425, we review the summary judgment record to determine whether there is no genuine issue of material fact and the Ramseys have established the applicability of the immunity provision as a matter of law, *see* M.R. Civ. P. 56(c); *Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169.

[¶13]  We review de novo the trial court's interpretation and application of the relevant statutes governing immunity.  *See Perry v. Dean*, 2017 ME 35, ¶ 11, 156 A.3d 742; *Bank of Am., N.A. v. Camire*, 2017 ME 20, ¶¶ 12, 13, 155 A.3d

416. "If the statute is unambiguous, we interpret the statute according to its unambiguous language, unless the result is illogical or absurd." *Wawenock, LLC v. Dep't of Transp.*, 2018 ME 83, ¶ 7, 187 A.3d 609 (quotation marks omitted). To the extent that there is any ambiguity in the statute, meaning that it could reasonably be interpreted in more than one way, we "consider the statute's meaning in light of its legislative history and other indicia of legislative intent." *Id.* (quotation marks omitted).

[¶14] Maine's Legislature enacted the immunity provisions at issue here in 1999. *See* P.L. 1999, ch. 498, §§ 2, 5. With certain exceptions, the statute provides that a person engaged in equine activity is immune from liability "for any property damage or damages arising from the personal injury or death of a participant or spectator resulting from the inherent risks of equine activities." 7 M.R.S. § 4103-A(1).

[¶15] McCandless concedes that the Ramseys' daughter was a person engaged in equine activity and that McCandless was a spectator. *See id.* McCandless argues, however, that a factual dispute exists as to whether her injury resulted from "the inherent risks of equine activities." *Id.* Inherent risks of equine activities are, by statutory definition, "those dangers and conditions

that are an integral part of equine activities." *Id.* § 4101(7-A). These dangers and conditions include, but are not limited to, the following:

> **A.** The propensity of an equine to behave in ways that might result in damages to property or injury, harm or death to persons on or around the equine. Such equine behavior includes, but is not limited to, bucking, shying, kicking, running, biting, stumbling, rearing, falling and stepping on;
>
> **B.** The unpredictability of an equine's reaction to such things as sounds, sudden movements and unfamiliar objects, persons or other animals;
>
> **C.** Certain hazards such as surface and subsurface conditions;
>
> **D.** Collisions with other equines or objects; and
>
> **E.** Unpredictable or erratic actions by others relating to equine behavior.

*Id.*[2]

[¶16] The circumstances that led to McCandless's injury epitomize the types of risks that are inherent in equine activities. The dangers or conditions inherent in equine activities certainly include the danger of being injured when a horse and rider pass too close to a spectator standing in the track of a horse arena. A horse's unanticipated resistance to the rider's directions is part and

---

[2] Contrary to McCandless's contention, the dangers and conditions inherent in equine activities relate to more than just a horse's potential to act unpredictably. *See Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 31 (D. Me. 2010) ("[T]he inherent risks to equine activities listed in the statute pertain to the unpredictable nature of equine behavior, the unpredictable conduct of other individuals, and certain natural hazards . . . ." (quotation marks omitted)).

8

parcel of the "propensity of an equine to behave in ways that may result in . . . injury . . . to persons on or around the equine." *Id.* § 4101(7-A)(A).

[¶17]   To the extent that there is any ambiguity, however, we must construe the statute in light of the legislative history.   The Legislature, in enacting the immunity provision, "revise[d] the equine activity laws to confirm that there are inherent risks involved in equine activities that are impracticable or impossible to eliminate due to the nature of equines."   L.D. 2108, Summary (119th Legis. 1999).   The Committee on Agriculture, Conservation and Forestry, which recommended passage of the bill, accepted written materials from representatives of the Maine Equine Advisory Council, the Maine Equine Industry Association, and the University of Maine, and from owners of horses and equine facilities.   *Hearing on An Act to Clarify the Equine Activity Law, L.D. 2108, Before the Joint Standing Committee on Agriculture, Conservation & Forestry*, 119th Legis. (Apr. 1999) (materials submitted by Jacquelyn Krupinksy, Sarah Brooks, Rick Shepherd, Jim Jaeger, Stephen G. Ulman, and James A. Weber).   These organizations and individuals urged the committee to recommend the law's passage so that horse owners, and operators of horse-related businesses, could engage in equine activities without risking

excessive liability or facing exorbitant, possibly prohibitively expensive, insurance premiums. *Id.*

[¶18] Interpreting the statute at issue as McCandless requests would thwart the entire purpose of the law to curtail liability for injuries arising from risks that are "impracticable or impossible to eliminate due to the nature of equines" and to allow reasonable access to insurance for those engaged in horse-related activities. L.D. 2108, Summary (119th Legis. 1999); *see Hearing on An Act to Clarify the Equine Activity Law, L.D. 2108, Before the Joint Standing Committee on Agriculture, Conservation & Forestry*, 119th Legis. (Apr. 1999) (materials submitted by Jacquelyn Krupinksy, Sarah Brooks, Rick Shepherd, Jim Jaeger, Stephen G. Ulman, and James A. Weber). Reading the statute not to provide immunity to the child in these circumstances would be unreasonable and against the intentions of the Legislature, and we will not construe the statute in such a manner. *See Wawenock, LLC*, 2018 ME 83, ¶ 7, 187 A.3d 609.

[¶19] Given the particularized definition of the "inherent risks of equine activities" applicable here, and the legislative history available for purposes of interpreting any ambiguity in the statute, we conclude as a matter of law that, on the facts presented on summary judgment, immunity has attached. *See* 7 M.R.S. §§ 4101(7-A), 4103-A(1); *cf. Merrill v. Sugarloaf Mountain Corp.*, 1997

ME 180, ¶¶ 5, 7 & n.3, 698 A.2d 1042 (holding—when the statute did not define the term "risk of the dangers inherent in the sport" of skiing—that the issue of whether the plaintiff's injuries arose from those risks was a question of fact (quotation marks omitted)).[3]

[¶20]  The Ramseys' daughter is therefore entitled to immunity unless one of the statutory exceptions to immunity applies.  *See* 7 M.R.S. § 4103-A(2)-(4).  McCandless argues that two exceptions apply because (A) the Ramseys' daughter acted recklessly in causing McCandless's injury and (B) McCandless was in an area where horses would not be expected or that was a protected area for spectators.  *See id.* § 4103-A(2)(C), (4).

A.     Exception for Injuries Resulting from a Reckless Disregard for the Safety of Others

[¶21]  Immunity will not lie if the party involved in equine activities "[c]omit[ted] an act or omission that constitute[d] reckless disregard for the safety of others and that act or omission caused the injury."  *Id.* § 4103-A(2)(C).[4]

---

[3]  McCandless also argues that the trial court improperly placed on her the duty to demonstrate that her injury did *not* arise from an inherent risk of equine activity.  *See Hilderbrand v. Wash. Cty. Comm'rs*, 2011 ME 132, ¶ 7, 33 A.3d 425 (holding that the person asserting the affirmative defense of immunity bears the burden of proof).  We discern no such misapplication of the burden and, reviewing the summary judgment de novo, conclude that the material facts, viewed in the light most favorable to McCandless, show that McCandless's injury resulted from the inherent risks of equine activity.

[4]  Although not raised by the Ramseys, the heading for this exception suggests that it should apply only if a *participant* in equine activity—not a mere spectator—is injured.  *Compare* 7 M.R.S.

For purposes of the statute, "[a] person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result." 17-A M.R.S. § 35(3)(A) (2018); *see* 7 M.R.S. § 4103-A(2)(C).

[¶22] Although "conscious disregard" is a subjective state of mind that may be inferred from objective conduct, there are no facts on this record from which such a state of mind could be inferred. *See State v. Taylor*, 661 A.2d 665, 668 (Me. 1995); *State v. Goodall*, 407 A.2d 268, 280 (Me. 1979). The Ramseys' ten-year-old daughter was riding this particular horse for the first time. When the girl approached McCandless on her fourth circuit, she attempted to steer the horse to avoid a collision, but the horse took longer than the girl expected to respond to her directions, and she had difficulty getting the horse to turn, which led to the collision at issue. Although these facts may suggest negligence, and indeed it is negligence that McCandless has alleged in her complaint, they are not facts from which a trier of fact could find that McCandless was injured because the child consciously disregarded a known safety risk.

---

§ 4103-A(2) (2018) (entitled, "Exceptions; participants") *with* 7 M.R.S. § 4103-A(4) (2018) (entitled, "Exceptions; persons who are not participants"); *but see* 1 M.R.S. § 71(10) (2018) ("Abstracts of Titles, chapters and sections, and notes are not legal provisions."). Because we conclude that the exception is inapplicable for other reasons, we do not address this question further.

12

B.    Exception for Injuries Occurring in Places Where Horses Would Not Be Expected or in Designated Spectator Locations

[¶23]  McCandless next argues that the Ramseys' daughter is not immune from liability because she either

A.  Cause[d] injury . . . to a person who [was] not a participant and who [was] in a place where a reasonable person would not expect an equine activity to occur; or

B.  Cause[d] injury . . . to a spectator and that spectator was in a place designated or intended by an activity sponsor as a place for spectators.

7 M.R.S. § 4103-A(4).

[¶24]  By McCandless's own report, the incident occurred in an area where a reasonable person *would* expect equine activity to occur.  *See id.* § 4103-A(4)(A).  Specifically, McCandless was standing in an area where horses were ridden, and she saw the Ramseys' daughter ride directly past her three times before the accident.  The place where she stood was a place where equine activity was, in fact, occurring and where it could be expected to occur, and McCandless herself observed that equine activity was occurring there.

[¶25]   Nor do the facts—viewed in the light most favorable to McCandless—show that McCandless was in a designated spectator area.  *See id.* § 4103-A(4)(B).  A designated observation room was available, but the incident did not occur in that observation room.   In the arena grounds where

McCandless suffered her injury, there was no differentiation between horse traffic areas and pedestrian traffic areas. Although the area near where McCandless stood was used by pedestrians to exit the arena, she was standing in an area that was intended to be used—and was actually being used—for equestrian activities and not an area "designated or intended . . . for spectators." *Id.* The specifically designated spectator area is not where McCandless was standing, or exiting from, when the collision occurred.

[¶26] Because the facts—viewed in the light most favorable to McCandless—show that no statutory exception to immunity applies, we conclude, as did the trial court, that the Ramseys' daughter is entitled to immunity pursuant to section 4103-A(1) as a matter of law. *Cf. Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 32-33 & n.5 (D. Me. 2010) (concluding that summary judgment was inappropriate because there were questions of material fact regarding the applicability of a statutory exception to immunity from liability for equine activities).

The entry is:

Judgment affirmed.

14

MEAD, J., with whom JABAR and HUMPHREY, JJ., join, concurring in part and dissenting in part.

[¶27] I concur in part with, and respectfully dissent in part from, the Court's opinion. I do not disagree with the Court's description of the immunity from liability for equine activities established by Section 4103-A of Title 7 of the Maine Revised Statutes and the court's discussion of the objectives behind that statute. It is clear that the Maine Legislature created a broad immunity, with narrow exceptions, for liability resulting from equine activities. I diverge from the Court's conclusions, however, based upon the Court's application of our standard of review of summary judgments to two of the narrow exceptions.[5] In reviewing the Superior Court's granting of summary judgment de novo, and viewing the facts of this matter in the light most favorable to McCandless as we must, I would conclude that genuine issues of material fact exist regarding the application of two exceptions to the statutory immunity for equine activity. I would vacate the grant of summary judgment and remand for trial on those limited issues only.

[¶28] Subsection 4 of 7 M.R.S. § 4103-A provides:

**4. Exceptions; persons who are not participants.** Nothing in subsection 1 prevents or limits the liability of an equine activity

---

[5] I concur in the Court's opinion in all other aspects.

sponsor, an equine professional or any other person engaged in an equine activity, if that equine activity:

   A. Causes injury or death to a person who is not a participant and who is in a place where a reasonable person would not expect an equine activity to occur; or

   B. Causes injury or death to a spectator and that spectator was in a place designated or intended by an activity sponsor as a place for spectators.

[¶29]  Under subsection (4)(A), the Ramseys would not be immune from liability if McCandless's injury occurred in a place where a reasonable person would not expect an equine activity to occur—an objective inquiry that is ordinarily entrusted in the first instance to the trier of fact, not an appellate court on a review of a summary judgment.  In their statement of material facts supporting their motion for summary judgment, the Ramseys asserted that the collision occurred in an area where it was typical to see horses.  This assertion, if uncontroverted, would be dispositive of the issue: the subsection (4)(A) exception would not be available to McCandless to avoid the immunity provided by 7 M.R.S. § 4103-A(1).

[¶30]  McCandless properly controverted that fact, however, asserting that horses did not ride in the area regularly used by pedestrians to exit the building when pedestrians were present.  Accepting that fact, as we must, in the light most favorable to the party against whom summary judgment has been

16

granted, McCandless has established, for the purposes of summary judgment review, that equine activities would not take place in the vicinity of the collision *if pedestrians were present.* The questions of (1) whether or not this conditional practice actually existed, or (2) whether it indeed occurred on July 7, 2010, or (3) whether a reasonable person would have held McCandless's opinions and perceptions at the moment of the collision, are categorically questions of fact that are exclusively the province of the finder of fact and cannot be resolved by summary judgment.[6] *See Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18 ("If material facts are disputed, the dispute must be resolved through fact-finding . . . .").

[¶31] Additionally, the exception provided in subsection (4)(B) may also operate to avoid the immunity created in section 4103-A(1) if McCandless was in a place designated or intended as a place for spectators. The undisputed facts establish that the indoor arena was located in a barn with an observation room

---

[6] The Court posits that because the Ramseys' daughter had ridden the horse past McCandless in the same spot on three earlier occasions, this establishes that it is impossible, as a matter of law, that McCandless could ever prove that she was in an area where she would not expect equine activity to take place. *See* Court's Opinion ¶ 24. Despite the fact that we may deem a litigant to have a steep challenge in proving a necessary element at trial, or find her assertions seemingly implausible, we may not superimpose our perceptions of the permissible inferences to be drawn from disputed facts in our appellate review of summary judgments. *See Rose v. Parsons*, 2015 ME 73, ¶ 4, 118 A.3d 220 ("[The s]ummary judgment process is not a substitute for trial, even if the likelihood of success at trial by one party or another is small. When facts or reasonable inferences to be drawn from the facts are in dispute, the court must engage in fact-finding, and summary judgment is not available." (citations omitted)).

from which spectators could observe the goings-on in the barn. Additionally, folding chairs had been placed along the interior wall of the barn in the indoor arena; horses were not typically present in this area. The parties do not dispute that the observation room and the chairs along the wall were designated as places for spectators.

[¶32] Prior to the incident, McCandless had been sitting in one of the folding chairs. The collision occurred after she left the area of the chairs and was proceeding to the south barn exit to leave the arena. The fact that the observation room and the folding chairs were located inside the building and could be accessed by a spectator only by entering or exiting through one or the other of the doors presents a plausible conclusion: the exit routes between the observation points and the doors may be deemed, by extension, places designated for spectators. That conclusion, and the purely factual question of whether McCandless's most direct exit route required her to pass through the area where the collision occurred are, again, questions of fact that cannot be determined on this summary judgment record.

[¶33] Because unresolved questions of material fact remain surrounding the issue of whether the subsection 4(A) or 4(B) statutory exceptions to liability apply, we should not conclude that the Ramseys are entitled to immunity under

section 4103-A(1) as a matter of law.  *See Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 32 n.5 (D. Me. 2010).

[¶34]  I would partially vacate the granting of summary judgment and remand for trial on the issues of whether the subsection 4(A) and 4(B) exceptions to immunity apply.  I would affirm the granting of summary judgment on all other issues relating to liability.

---

Arthur J. Greif, Esq. (orally), Gilbert & Greif, P.A., Bangor, for appellant Nancy J. McCandless

Gregory S. Clayton, Esq. (orally), Primmer Piper Eggleston & Cramer PC, Camden, for appellees John Ramsey et al.

Washington County Superior Court docket number CV-2016-14
FOR CLERK REFERENCE ONLY